UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

PAULO CABRAL,

                                                    Chapter 13

            Debtor                                  Case No. 05-11663-JNF

COUNTRYWIDE HOME LOANS, INC.,
its assignees, and/or its successors in
interest
                Movant

            and

PAULO CABRAL;
DOREEN B. SOLOMON, Trustee
            Respondents

## MOTION FOR ORDER GRANTING RELIEF FROM AUTOMATIC STAY

Countrywide Home Loans, Inc., its assignees, and/or its successors in interest ("Movant" herein) allege as follows:

1.      That on March 9, 2005, the above-named Debtor filed his Chapter 13 Petition in Bankruptcy with this Court.

2.      Movant is the current payee of a promissory note dated August 25, 2003, in the principal amount of $600,000.00 ("Note" herein) secured by a first mortgage of same date ("Mortgage" herein) on property generally described as **435 LaFayette Street, Salem, Massachusetts,** set forth in the Note and Mortgage attached hereto as **Exhibit 1** and made a part hereof ("Property" herein). .

3.      The Chapter 13 Plan has not yet been confirmed.

4.      The pre-petition arrearage, as set forth in the Proof of Claim dated March 21, 2005, was $57,165.68.

1

5.     With respect to Movant's Note and Mortgage, the following is due and owing:

Total debt as of March 9, 2005 pursuant to the payoff statement:

| | |
|---|---|
| Unpaid principal balance: | $600,000.00 |
| Interest Payable | $ 47,679.45 |
| Uncollected Late charges | $      90.00 |
| Uncollected Fees Due | $ 25,739.71 |
| Interest from 06/01/05 through 06/30/05 | $   4,052.05 |
| Additional Fees and Costs | $      20.00 |
| Bankruptcy fees and costs | $    750.00 |
| TOTAL DEBT | $678,331.21 |

Total post-petition arrearage as of July 8, 2005:

| | |
|---|---|
| Monthly payments for March 20, 2005 at $3,567.12 | $   3,567.12 |
| Monthly payments for April 20, 2005 at $4,076.71 | $   4,076.71 |
| Monthly payments for May 20, 2005 at $4,068.49 | $   4,068.49 |
| Monthly payment for June 20, 2005 | $   4,204.11 |
| Uncollected Late charges | $      20.00 |
| Bankruptcy fees and costs | $    950.00 |
| TOTAL ARREARAGES | $ 16,886.43 |

    a.     The total amount of the debt owed Movant, which is secured by a first-position mortgage, is $678,331.21.

    b.     Other encumbrances affecting the Property, including other mortgages, real estate taxes, and other municipal charges are as follows: None, per Debtor's schedules

    c.     The total amount set forth in Sections (a) and (b) above is $678,331.21.

    d.     The estimated fair-market value of the Property is approximately 900,000.00, as evidenced by the Debtor's Schedules A and D attached hereto as **Exhibit 2.**

    e.     There is no other collateral securing the obligation.

6.     Movant has elected to initiate foreclosure proceedings on the Property with respect to the subject Mortgage; however, Movant is precluded from proceeding to publish the necessary notices and commence said foreclosure action during the pendency of this Bankruptcy.

7.     Based on the foregoing, Movant alleges that it is not adequately protected, that the subject Property is not necessary to effectuate Debtor's rehabilitation, and that it would be unfair and inequitable to delay this Movant in the foreclosure of its interest. Movant urges that this Court issue an Order herein permitting this Movant to proceed to a Foreclosure Sale of the Property, including necessary action to obtain possession of the Property.

8. Movant has incurred attorneys' fees in bringing this Motion and is entitled to reimbursement for those fees pursuant to its contract and in accordance with 11 U.S.C. 506(b).

9. This Court has jurisdiction of this action pursuant to the provisions of Title 28 U.S.C. Sections 1334 and 157 and 11 U.S.C. Section 362(d).

WHEREFORE, Movant prays judgment as follows:

1. For an Order granting Relief from the Automatic Stay, permitting this Movant to move ahead with foreclosure proceedings under Movant's Mortgage and to sell the subject Property under the terms of said Mortgage, including necessary action to obtain possession of the Property.

2. In the alternative, for an Order requiring

   a. the Debtor to reinstate and maintain in a current condition all obligations due under the Mortgage, including tax/insurance obligations and reimbursement to Movant of any sums advanced on behalf of the Debtors in order to protect Movant's interest in the subject Property; and

   b. allowing this Movant to proceed with a Foreclosure Sale of the Property and obtain possession thereof should the Debtors fail to maintain the above-referenced payments in current status.

3. For such order regarding adequate protection of Movant's interest as this Court deems proper.

4. For attorneys' fees and costs for suit incurred herein.

5. For an order waiving the ten-day stay described by Bankruptcy Rule 4001(a)(3).

[This space left intentionally blank]

6.    For such other relief as this Court deems appropriate.

DATED:

7/26/05

By: /s/ Jeffrey M. Frankel
    JEFFREY M. FRANKEL, ESQUIRE
BBO No. 558099
Local Counsel
Law Offices of Jeffrey M. Frankel
258 Elm Street, Suite 200
Somerville, MA 02144
(617) 628-5505
(617) 628-5255 (fax)


Polk, Prober & Raphael, A Law Corporation
P.O. Box 4365
Woodland Hills, CA 91365-4365
(818) 227-0100
C.188-207

COUNTRYWIDE HOME LOANS, INC.

Prepared by: DONNA M. MARTINO

DATE:           08/25/2003
BORROWER: PAULO CABRAL
CASE #:
LOAN #:        37896764
PROPERTY ADDRESS: 635 LAFAYETTE STREET
                 SALEM, MA 01970

Branch #: 0000816
701 KENMORE STREET
PEABODY, MA 01960
Phone: (800)411-0326
Br Fax No : (978)531-6303

## HOME EQUITY CREDIT LINE AGREEMENT AND DISCLOSURE STATEMENT

Date: AUGUST 25, 2003

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you,
COUNTRYWIDE HOME LOANS, INC.
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to
COUNTRYWIDE HOME LOANS, INC.

1. LOAN(S); DRAW AND REPAYMENT PERIOD. Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period,") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 4 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 11.D, 11.D, 12.B or 16.A below.) You will not make any loan before the fourth business day following the signing of this Agreement, except to the extent of proceeds of this loan that are for the purchase and initial construction of the Property.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purpose of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purpose of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 12.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

2. MAKING LOANS. You will make loans under this Agreement by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) paying closing costs and finance charges in accordance with paragraph 7.C below; (iii) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (iv) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Mortgage; or (v) any other method or procedure you establish.

3. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement monthly. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

C. I may pay all or any part of my "New Balance" at any time, subject to an Account Termination Fee or Low Balance Fee, as applicable, as described in paragraph 7.D and 7.E, respectively. If I pay my entire "New Balance" shown on my periodic statement for any billing cycle by the "Payment Due Date," any periodic finance charge

CCPY
4  HELOC - MA Agreement & Disclosure
2E7414EA (03/02)(d.l40)

Page 1 of 9

Initial 



EXHIBIT 1

LOAN #1 37896764

incurred from the first day of the next billing cycle until the posting of my payment will appear on my periodic statement for the next billing cycle.

D. I may pay all or any part of my "New Balance" using an Equity Credit Line Check ("Check"). If I use a check to pay all or any part of my New Balance, I understand that:

(1) The amount of the Check will be treated as any other advance is treated under the terms and conditions of my Account. My check will not be honored if I do not have sufficient availability on my Account.
(2) If I make a payment using a Check, my principal balance will not decrease. This principal balance will increase by the amount of the Check.
(3) Interest will accrue on the total increased principal balance when I use a Check to make a payment on my Account.
(4) You may not use a Check to make a payment once the Draw Period ends. That is, a Check may not be used to make a payment during the Repayment Period.

E. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 12.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

F. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my account.

G. During the Repayment Period, if the Draw Period on my Account is 60 months or 121 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during this billing cycle together with any "Amount Past Due."

**4. CREDIT LIMIT.** My Credit Limit under this Agreement is $ 600,000.00 . I promise not to request loans which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit.

**5. ANNUAL PERCENTAGE RATE.**

☐ A. The initial Daily Periodic Rate is N/A %. The initial ANNUAL PERCENTAGE RATE is N/A %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 6.C below had been used, in which event the initial Daily Periodic Rate would be N/A % and the initial ANNUAL PERCENTAGE RATE would be N/A . Thereafter, the discounted rates will be in effect from the date of this Agreement until N/A . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 6.C below.

☒ B. The initial Daily Periodic Rate is 0.01781 % and the initial ANNUAL PERCENTAGE RATE is 6.500 %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (beginning with the first day of the first billing cycle after my "discounted" rate has expired, if applicable) according to the following procedure: The ANNUAL PERCENTAGE RATE shall be the "Index" plus a "Margin." The "Index" will be the highest Prime Rate as published in the "Money Rates" table of The Wall Street Journal as of the last business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 5.D below. Each billing cycle will end on the last day of the calendar month. Any new index value shall be effective as of the first day of the billing cycle in which such new index value is established.

Upon a change in the index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the ANNUAL PERCENTAGE RATE divided by 365.

D. The "Margin" to be used under paragraph 6.C above to determine my ANNUAL PERCENTAGE RATE is 2.500 percentage points.

CORP
© HCLCC - WA Agreement & Disclosure
CCT41-WA (05/02)/81                    Page 6 of 9                    Initials: _P.C_

LOAN #: 37096764

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The ANNUAL PERCENTAGE RATE will never increase above   18.000 % or the maximum rate permitted by state law, whichever is less.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

**6. FINANCE CHARGE.** I agree to pay a finance charge on my Account as explained below.

**A. Periodic FINANCE CHARGE.**

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that you pay the check. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(2) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

**B. Other FINANCE CHARGES.**

(1) Points FINANCE CHARGE.

I agree to pay a Points FINANCE CHARGE of $ 0.00                at the time I sign this Agreement.

| | $ |
| --- | --- |
| | $ |
| | $ |
| | $ |
| | $ |

(2) Broker Fee FINANCE CHARGES.

I agree to pay Broker Fee FINANCE CHARGES of $ N/A              at the time I sign this Agreement.

| | $ |
| --- | --- |
| | $ |
| | $ |
| | $ |

(3) Settlement Agent FINANCE CHARGES.

I agree to pay the following Settlement Agent FINANCE CHARGES at the time I sign this Agreement:

| Attorney's Fee | $ | 695.00 |
| --- | --- | --- |
| | $ | |
| | $ | |
| | $ | |
| | $ | |

(4) Miscellaneous FINANCE CHARGES.

I agree to pay the following miscellaneous FINANCE CHARGES at the time I sign this Agreement:

| Flood Check Fee | $ | 25.00 |
| --- | --- | --- |
| | $ | |
| | $ | |
| | $ | |

CONV
= HELOC - MA Agreement & Disclosure
PCFH1-MA (04/02-01)

Page 3 of 8

Initial: P.C.

LOAN #: 37896764

## 7. OTHER CHARGES.

A. I agree to pay each of the charges listed below, which shall constitute additional indebtedness under this Agreement if I have not paid such charge by the "Payment Due Date" shown on my periodic statement for the billing cycle in which such charge is assessed:

(1) [X] I agree to pay an annual fee of $ 76.00 _____ which you will charge to my Account on the first anniversary of this Agreement and every anniversary date thereafter, whether or not I have used or continue to use my Account; except that such fee shall be waived for the entire term of this Agreement if I meet both of the following conditions: (a) I maintain an average outstanding daily balance in which does not fall below $ 20,000.00 _____ from the date of this Agreement through the first anniversary of it is Agreement; and (b) I make each monthly payment during that period on or before the due date for each such payment. You will not rebate any portion of the annual fee if my Account is terminated or suspended before the end of any annual period

[ ] I will not be charged an annual fee on this loan.

(2) If I fail to make my "Minimum Payment Due" within fifteen (15) days of the "Payment Due Date." I agree to pay a late fee of 3% of the outstanding balance of my account or $10.00, whichever is less.

(3) For each Equity Credit Line Check written for less than $250 which you honor, I agree to pay a Processing Fee of $5.

(4) I agree to pay a Return Item Fee of $10 for each check you receive in payment of my Account which is returned unpaid upon second presentment.

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

| | | |
|---|---|---|
| Full Appraisal | $ | 275.00 |
| Credit Report Fee | $ | 38.00 |
| Abstract/Title | $ | 250.00 |
| Title Insurance | $ | 1,656.00 |
| Recording | $ | 370.00 |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| LESS Amounts Paid by Lender | $ | 3,800.00 |
| Total Paid by Borrower | $ | 0.00 |

C. I may elect to pay the closing costs described in paragraph 7.B above and the finance charges described in paragraph 6.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

D. [X] If checked, this Mortgage is in a first lien position, and if I pay in full and terminate my Account with you and ask you to satisfy my mortgage lien within the first nine months after I have signed this Agreement, I agree to pay an Account Termination Fee of the lesser of $350 or three months's interest to cover your costs of processing and administering my Account.

[ ] If checked, this Mortgage is in a junior lien position, and if I pay in full and terminate my Account with you and ask you to satisfy my mortgage lien on or before the fifth (5th) _____ anniversary of this Agreement, I agree to pay an Account Termination Fee of $ 350.00 _____ to cover your costs of processing and administering my Account.

[ ] I will not be charged an Account Termination Fee on this loan.

E. [ ] In consideration of having an Account with a reduced Margin, I agree to maintain an Average Daily Balance of $40,000 in each monthly billing cycle during the first two years of my Account. I further agree to pay a Low Balance Fee of $40 for each monthly billing cycle during the first two years of my Account in which I fail to maintain an Average Daily Balance of $40,000. You will not charge me this fee for the month in which you charge me an Account Termination Fee pursuant to the terms of paragraph 7.D.

COPY
® HELOC - VA Agreement & Disclosure
VOI-VI-VA (05/02/01)

Page 4 of 6                                    Initials: *RC*

LOAN #: 37836764

**8. REAL PROPERTY SECURITY.** To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Mortgage (the "Mortgage") covering my dwelling located at
-135 LAFAYETTE STREET, SALEM, MA 01970
(the "Real Property"). The Mortgage is security for my current and future obligations under this Agreement. This Mortgage is in a [X] first  [  ] junior lien position. I will continue to be obligated to make payment to you under this Agreement even if the Real Property is damaged or destroyed and whether or not any insurance proceeds are available.

**9. SECTION INTENTIONALLY OMITTED.**

**10. REAL PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Mortgage or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

**11. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.**

A. You may take the actions listed in paragraph 11.B below during the period that any of the following events or conditions occur:

(1) the value of the Real Property declines significantly below its appraised value or the purposes of my Account;

(2) you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

(3) I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 13 below;

(4) government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

(5) government action (such as imposition of a tax lien) impairs the priority of the lien of the Mortgage such that the value of the lien of the Mortgage is less than 120% of my Credit Limit;

(6) the maximum Annual Percentage Rate set forth in paragraph 5.E above is reached

(7) the creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

B. During the period in which a condition described in paragraph 11.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 11.A above or 12.A below have occurred.

C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Mortgage is not impaired.

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 11.A above or 11.A below has occurred.

E. If an event or condition described in paragraph 11.A above occurs which is also an event or condition described in paragraph 12.A below, your rights and remedies described under paragraph 12.B below apply and supersede your rights described in this paragraph 11.

LOAN #: 37096764

**12. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION**

A. You may take the actions listed in paragraph 12.B below if any of the following events or conditions occur:

(1) I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2) I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Mortgage;

(3) I sell or transfer title to the Real Property without first obtaining your written permission;

(4) I fail to maintain insurance on the Real Property as required under this Agreement or the Mortgage;

(5) I act or fail to act and as a result a lien senior to the lien of the Mortgage is filed against the Real Property;

(6) I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7) All or part of the Real Property is taken through eminent domain, condemnation or similar government taking;

(8) A prior lienholder on the Real Property begins foreclosure under its security documents;

(9) The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

(10) I fail to pay taxes on the Real Property; or

(11) My action or inaction adversely affects the Real Property or your rights in the Real Property. Such action or inaction could include, for example, the following:

(a) A judgment is filed against me;

(b) I commit waste or otherwise destructively use or fail to maintain the Real Property;

(c) I die and I am survived by another person obligated as a Borrower under this Agreement;

(d) I move out of the Real Property; or

(e) I break any promise made in this Agreement (including those set forth in paragraph 13 below) or in the Mortgage.

B. If an event described in paragraph 12.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1) you may terminate any of my rights under my Account;

(2) you may temporarily or permanently refuse to make any additional loans;

(3) you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

(4) you may foreclose the Mortgage;

(5) you may reduce my Credit Limit; and

(6) you may take any other action permitted by this Agreement, by law or in equity.

**13. MY IMPORTANT OBLIGATIONS. I agree that:**

A. I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B. I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C. From time to time, if requested I will supply you with current financial information about me.

D. I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Mortgage.

E. I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property.

F. I will not use or allow use of the Real Property for any illegal purpose.

G. I will not move out of the Real Property

H. I will not permit a lien to be filed which takes priority over the Mortgage for future advances made under this Agreement.

I. I will not break any promise made in this Agreement or in the Mortgage such as:

(1)  my promise not to exceed my Credit Limit; and

(2)  my "Important Obligations" listed in the Mortgage.

**14. COSTS OF COLLECTION.** Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. Periodic finance charge will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

**15. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.**

A. Termination by Me. I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 15.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 11.D above.

B. Termination by You. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 11 B or 12 B above or my exercise of my suspension or termination rights under paragraphs 11 D or 15.A above.

C. Effect of Termination. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligation to you immediately if you exercise your rights under paragraph 12.B above. I must return unused Equity Credit Line Checks to you upon termination. I may be required to pay an Account Termination Fee pursuant to paragraph 7.D above.

**16. CHANGES TO AGREEMENT.**

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

(1)  if the original Index is no longer available, you may change the Index and Margin;

(2)  you may make any change I agree to in writing;

(3)  you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans;

(4)  you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which Index values are measured to determine my rate, your rounding rules and the balance computation method; and

(5)  you may make any changes to this Agreement if an event under paragraph 12.A et seq occurs.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

LOAN #: 37096764

**17. OTHER PROVISIONS**

A. Third Parties. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me. I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Mortgage at any time without my consent.

B. Additional Credit Reports and Appraisals. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Mortgage as you may deem necessary from time to time. I will cooperate in having the Real Property reappraised.

C. Tax Deductibility. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. Applicable Law. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Real Property is located.

E. Application of Payments. You may apply payments and proceeds of the Real Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. Failure to Perform. If I violate or fail to perform any term or condition of this Agreement (or the Mortgage), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. Waiver of Jury Trial. I waive my right to a jury trial.

H. Complete Understanding of the Parties. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

I. Waiver of Notice. I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z.

J. Meaning of Words. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

K. Payment Marked "Payment in Full". I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to
COUNTRYWIDE HOME LOANS, INC.
P.O. Box 5170, Simi Valley, CA 93062-5170

L. Enforcement. You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

M. Notices. Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 17.M and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at
COUNTRYWIDE HOME LOANS, INC.
P.O. Box 5170, Simi Valley, CA 93062-5170
or to such other address as you may designate by written notice to me as provided in this paragraph 17.M.

COPY
* HELOC - WA Agreement & Disclosure
2CE1446A (08/04) .01                    Page 4 of 5                    Initials _P.C_

LOAN #: 37896764

**N. Riders/Addenda.** The covenants and agreements of each of the riders/addenda checked below are incorporated into and supplement and amend the terms of this Agreement.

☐ No Cost Addendum

☒ Billing Rights Statement

☐ _____ Addendum

☐ _____ Rider

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT" AND THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE."

Witness _____   Borrower: PAULO CABRAL   8/25/03 Date

Witness _____   Borrower: _____   Date

Borrower: _____   Date

Borrower: _____   Date

COPY
® HELOC - MA Agreement & Disclosure
EQFA1-MA (05/03) 91

Page 8 of 8



2003082801110 Bk:21647 Pg:69
08/28/2003 15:41:00  MTG Pg 1/11

CHL    008000005    CABRAL    P
610  037896764   D2  001  002

WHEN RECORDED MAIL TO:
COUNTRYWIDE HOME LOANS, INC.
MSN SV-79 / DOCUMENT CONTROL DEPT
P.O BOX 10266
VAN NUYS, CALIFORNIA 91410-0266

DOC ID #: 00037896764640102

ESCROW/CLOSING #:

SPACE ABOVE FOR RECORDERS USE

PARCEL ID #: 32-422
Prepared by: D. MARTINS

## MORTGAGE
### (Line of Credit)

THIS MORTGAGE, dated August 25        ,2003 , is between
PAULO CABRAL

residing at
435 LAFAYETTE STREET, SALEM, MA 01970-
the person or persons signing as "Mortgagor(s)" below and hereinafter referred to as "we" or "us" and
COUNTRYWIDE HOME LOANS, INC.
with an address at
4500 Park Granada, Calabasas, CA 91302-1613
and hereinafter referred to as "you" or the "Mortgagee."

MORTGAGED PREMISES: In consideration of the loan hereinafter described, we hereby mortgage, grant and convey to
you, with mortgage covenants and with power of sale, the premises located at:
435 LAFAYETTE STREET

| | Street | | | |
|---|---|---|---|---|
| SALEM | MIDDLESEX | MA | 01970- | (the "Premises") |
| Municipality | County | State | ZIP | |

and further described as:
SEE EXHIBIT 'A' ATTACHED HERETO AND MADE A PART HEREOF.

The Premises includes all buildings and other improvements now or in the future on the Premises and all rights and interests which
derive from our ownership, use or possession of the Premises and all appurtenances thereto.

LOAN: The Mortgage will secure your loan in the principal amount of $ 600,000.00        or so much thereof as may be
advanced and readvanced from time to time to PAULO CABRAL
                                                                                                              , and
                                            , the Borrower(s) under the Home Equity Credit Line Agreement
And Disclosure Statement (the "Note") dated August 25, 2003        , plus interest and costs, late charges and all other
charges related to the loan, all of which sums are repayable according to the Note. This Mortgage will also secure the performance
of all of the promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises and
agreements in this Mortgage, any extensions, renewals, amendments, supplements and other modifications of the Note, and any
amounts advanced by you under the terms of the section of this Mortgage entitled "Our Authority To You." The Note documents
an open-end credit plan as defined in General Laws chapter 140D section 1, pursuant to which loans may be made, repaid and
remade from time to time.

HELOC - MA MORTGAGE
2C4781MA (03/01)                                    Page 1 of 4                                    Initials: P.C.

2003082801110 Bk:21647 Pg:70
08/28/2003 15:41:00  MTG Pg 2/11

DC ID # 00037896764640102

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage the Premises to you.

BORROWER'S IMPORTANT OBLIGATIONS:

(a) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Note because we pay these taxes and charges. We will provide you with proof of payment upon request.

(b) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not use the Premises illegally. If this Mortgage is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(c) INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Mortgage, before we do. The insurance policies must also provide that you be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you receive payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

(d) CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any Prior Mortgage.

(e) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises.

(f) OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Mortgage, you may, if you choose, perform our obligations and pay such costs and expenses. You will add the amounts you advance to the sums owing on the Note, on which you will charge interest at the interest rate set forth in the Note. If, for example, we fail to honor our promise to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Note. This Mortgage secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Mortgage. Any replacement insurance that you obtain to cover loss or damages to the Premises may be limited to the amount owing on the Note plus the amount of any Prior Mortgages.

(g) PRIOR MORTGAGE: If the provisions of this paragraph are completed, this Mortgage is subject and subordinate to a prior mortgage dated July 31, 2003     and given by us to NONE
as mortgagee, in the original amount of $ 0.00                     (the "Prior Mortgage"). We shall not increase, amend or modify the Prior Mortgage without your prior written consent and shall upon receipt of any written notice from the holder of the Prior Mortgage promptly deliver a copy of such notice to you. We shall pay and perform all of our obligations under the Prior Mortgage as and when required under the Prior Mortgage.

(h) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection.

(i) SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

(j) INSPECTION: We will permit you to inspect the Premises at any reasonable time.

2003082801110 Bk:21647 Pg:71
08/28/2003 15:41:00 MTG Pg 3/11
/D # 00037896764640102

NO LOSS OF RIGHTS: The Note and this Mortgage may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Note and this Mortgage without losing your rights in the Premises.

DEFAULT: Except as may be prohibited by applicable law, and subject to any advance notice and cure period if required by applicable law, if any event or condition described in Paragraph 12.A. of the Note occurs, you may foreclose upon this Mortgage. This means that you may invoke the Statutory Power of Sale and may arrange for the Premises to be sold, as provided by law, in order to pay off what we owe on the Note and under this Mortgage. If the money you receive from the sale is not enough to pay off what we owe you, we will still owe you the difference which you may seek to collect from us in accordance with applicable law. In addition, you may, in accordance with applicable law, (i) enter on and take possession of the Premises; (ii) collect the rental payments, including over-due rental payments, directly from tenants; (iii) manage the Premises; and (iv) sign, cancel and change leases. We agree that the interest rate set forth in the Note will continue before and after a default, entry of a judgmentand foreclosure. In addition, you shall be entitled to collect all reasonable fees and costs actually incurred by you in proceeding to foreclosure, including, but not limited to, reasonable attorneys fees and costs of documentary evidence, abstracts and title reports.

ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

WAIVERS: To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Mortgage and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

BINDING EFFECT: Each of us shall be fully responsible for all of the promises and agreements in this Mortgage. Until the Note has been paid in full and your obligation to make further advances under the Note has been terminated, the provisions of this Mortgage will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Mortgage is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Note and this Mortgage, and provided any obligation to make further advances under the Note has terminated, this Mortgage and your rights in the Premises shall end.

NOTICE: Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Mortgage shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you shall be given by certified mail, return receipt requested, to your address at
  COUNTRYWIDE HOME LOANS, INC.
4500 Park Granada, Calabasas, CA 91302-1613
or to such other address as you may designate by notice to us. Any notice provided for in this Mortgage shall be deemed to have been given to us or you when given in the manner designated herein.

RELEASE: Upon payment of all sums secured by this Mortgage and provided your obligation to make further advances under the Note has terminated, you shall discharge this Mortgage without charge to us, except that we shall pay any fees for recording of a satisfaction of this Mortgage.

2003082801110 Bk:21647 Pg:72
08/28/2003 15:41:00 MTG Pg 4/11

DOC ID # 00037896764640102

**GENERAL:** You can waive or delay enforcing any of your rights under this Mortgage without losing them. Any waiver by you of any provisions of this Mortgage will not be a waiver of that or any other provision on any other occasion.

THIS MORTGAGE has been signed by each of us under seal on the date first above written.

WITNESS:

_____         ✓ *Paulo Cabral* _____ (SEAL)
                                Mortgagor: PAULO CABRAL

_____         _____ (SEAL)
                                Mortgagor:

                                _____ (SEAL)
                                Mortgagor:

                                _____ (SEAL)
                                Mortgagor:

COMMONWEALTH OF MASSACHUSETTS,                    Suffolk County ss:

On this 25th day of August, 2003, before me personally appeared Paulo Cabral

to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed

My Commission Expires: 1/09/09 _____

                                Notary Public  *Michael S. Field*

2003082801110 Bk:21847 Pg:73
08/28/2003 15:41:00  MTG Pg 6/11

## 1-4 FAMILY RIDER
### Assignment of Rents

Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENI PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
DONNA M. MARTINS

0003789676408003
[Doc ID #]

HELOC - 1-4 Family Rider
1U443-US (03/01)(d)                    Page 1 of 8           Initials: P.C.

2003082801110 Bk:21647 Pg:74
08/28/2003 16:41:00   MTG Pg 6/11

DOC ID #: 0003789676408003

THIS 1-4 FAMILY RIDER is made this 25th  day of AUGUST, 2003     , and is incorporated into
and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security
Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to:
COUNTRYWIDE HOME LOANS, INC.

4500 Park Granada
Calabasas, CA 91302-1613
("Lender") of the same date and covering the Property described in the Security Instrument and located at:
435 LAFAYETTE STREET
SALEM, MA 01970
1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.  **ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the
Property described in the Security Instrument, the following items are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials, appliances,
and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in
connection with the Property, including, but not limited to, those for the purposes of supplying or
distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing
apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks,
ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm
doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached
floor coverings now or hereafter attached to the Property, all of which, including replacements and
additions thereto, shall be deemed to be and remain a part of the Property covered by the Security
Instrument. All of the foregoing together with the Property described in the Security Instrument (or the
leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the
Security Instrument as the "Property."

B.  **USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a
change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the
change. Borrower shall comply with all laws, ordinances, regulations and requirements of any
governmental body applicable to the Property.

HELOC - 1-4 Family Rider
1U443-US (03/01)                          Page 2 of 6                       Initials: P.E

2003082801110 Bk:21647 Pg:75
08/28/2003 15:41:00 MTG Pg 7/11

DOC ID #: 0003789676408003

C.  **SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

D.  **RENT LOSS INSURANCE.** If Borrower at any time does not occupy the Property, and rents the Property, Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by the Security Instrument.

E.  **ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph E, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

F.  **ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agents. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower; (i) all Rents received by Borrower shall be held by the Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender,

HELOC -1-4 Family Rider
1U443-US (03/01)                          Page 3 of 6                          Initials: _P.C._

2003082801110 Bk:21647 Pg:76
09/28/2003 15:41:00 MTG Pg 8/11

DOC ID #: 0003789676408003

Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

Borrower represents and warrants that Borrower has not executed any prior assignment of Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph. Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all of the sums secured by the Security Instrument are paid in full.

G.  **PROTECTION OF LENDER'S RIGHTS IN THE PROPERTY.** If Borrower fails to perform the covenants and agreements contained in this Security Agreement, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fee and entering on the Property to make repairs. Although Lender may take action under this paragraph, Lender does not have to do so. Any amounts disbursed by Lender under this paragraph shall become additional debts of Borrower secured by the Security Instrument.

HELOC -1-4 Family Rider
1U443-US (03/01)                    Page 4 of 6                    Initials: P.C.

2003082801110 Bk:21647 Pg:77
08/28/2003 15:41:00  MTG Pg 9/11

DOC ID #: 0003789676408003

H.  **CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which
    Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the
    remedies permitted by the Security Instrument.

HELOC - 1-4 Family Rider
1U443-US (03/01)                          Page 5 of 6

P.C.

2003082801110 Bk:21647 Pg:78
08/28/2003 15:41:00 MTG Pg 10/11

DOC ID #: 0003789676408003

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4
Family Rider.

_Paulo Cabral_ _____
PAULO CABRAL                                                      Borrower

_____
                                                                 Borrower

_____
                                                                 Borrower

_____
                                                                 Borrower

HELOC - 1-4 Family Rider
1U443-US (03/01)                        Page 6 of 6

2003082801110 Bk:21647 Pg:79
08/28/2003 15:41:00  MTG Pg 11/11

## EXHIBIT 'A'

The land Salem, Essex County, Massachusetts, being shown as Lot 1 on a plan entitled "Plan of Land in Salem" property of Ernest R. Belleau, Jr. Realty Trust; Essex Survey Service, Inc., Surveyor, dated March 18, 1974, and revised May 9, 1974, said plan being filed as Plan No. 217 of 1974 in Book 6070, Page 439, of the Essex Registry of Deeds, Southern District, and said parcel bounded and described as follows:

| | |
|---|---|
| WESTERLY | by Lafayette Street, 150.00 feet; thence |
| SOUTHERLY | by Lot 2, as shown on said Plan, 65.00 feet; thence |
| EASTERLY | along an irregular course by the high water mark of Salem Harbor to the corner of a 9 foot right of way which separates the granted premises from the land now or formerly of Derby; thence |
| NORTHERLY | by the said 9 foot right of way now or formerly owned by Derby, 120.00 feet to the point of beginning. |

Said lot containing 13,296 square feet, more or less, according to said plan, and conveying together with all shore, marsh and flats belonging thereto.

This conveyance is made subject to such rights as other persons may have in a right-of-way over a strip of land twelve (12) feet in width adjacent to the northerly boundary of the granted premises and extending along said northerly boundary from said Lafayette Street northeasterly to the marsh, flats and Salem Harbor.  Also subject to superseding Order of Conditions recorded in Book 15870, Page 66 recorded with Essex South District Registry of Deeds.

130

Being the same premises conveyed to us by deed of Lothrop Street Realty Trust dated September 7, 2000  recorded with Essex South District Registry of Deeds in Book 16552 , Page 422.

In re  Paulo Cabral _____

                    Debtor

Case No. 05-11663 _____

                    (If known)

# SCHEDULE A--REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule.  List them in Schedule G--Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim.  See Schedule D.  If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C--Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| ONE FAMILY RESIDENCE | FEE | DEBT OT | 900,000 00 | 657.165 580 |
| 435 Lafayette Street | | | | |
| Salem, Mass. 01970 | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | Total (Report Also on Summary of Schedules) | | $ 900,000.00 | |

3

EXHIBIT 2                Tuesday, April 12, 2005.max

Case No. 05-11663
(If known)

In re   Paulo Cabral
_____
Debtor

# SCHEDULE D---CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and account number, if any, of all entities holding claims secured by property of the debtor as of the date of filing of this petition. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests. List creditors in alphabetic order to the extent practicable. If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules

☐ Check this box if debtor has no creditors holding secured claims on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND MARKET VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No.    37896764<br>Countrywide Home Loans, Inc<br>7105 Corporate Drive<br>Plano, Tex 75024 | | | August 25, 2003<br>FIRST MORTGAGE<br>435 Lafayette St. Salem, Mass.<br>Value:    $900,000.00 | | | | $600,000 00 | ZERO |
| Account No.    1011470927<br>Citizens Bank<br>PO Box M<br>Providence, RI o2901 | | | 2002<br>FIRST LIEN<br>2002 Ford Domp Truck<br>Value:    $12,000.00 | | | | $4,500.00 | ZERO |
| Account No. | | | <br><br>Value: | | | | | |
| Account No. | | | <br><br>Value: | | | | | |
| | | | Subtotal(Total of this page) | | | | $604,500 00 | |
| | | | Total(Use only on last page and on Summary of Schedules) | | | | $  0 00 | |

9

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

PAULO CABRAL,
     Debtor

Chapter 13
Case No. 05-11663-JNF

COUNTRYWIDE HOME LOANS, INC.,
its assignees, and/or its successors in
interest
     Movant

and

PAULO CABRAL;
DOREEN B. SOLOMON, Trustee
     Respondents

### ORDER GRANTING RELIEF FROM AUTOMATIC STAY

It appearing that neither the Debtor nor the Chapter 13 Trustee has any opposition to Movant's Motion for Relief from Automatic Stay, and with good cause appearing therefor, the Court makes its Order as follows:

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Automatic Stay in the above-entitled Bankruptcy proceeding is immediately vacated and extinguished for all purposes as to Movant, its assignees, and/or successors in interest, and Movant, its assignees and/or successors in interest may proceed with foreclosure of the subject Property generally

[This space left intentionally blank]

1

described as **435 LaFayette Street, Salem, Massachusetts**, pursuant to applicable statutory law,

and thereafter commence any action necessary to obtain complete possession thereof.

_____

Joan N. Feeney
U.S. Bankruptcy Judge


DATED:


JEFFREY M. FRANKEL, ESQUIRE
BBO No. 558099
Local Counsel
Law Offices of Jeffrey M. Frankel
258 Elm Street, Suite 200
Somerville, MA 02144
(617) 628-5505
(617) 628-5255 (fax)


Polk, Prober & Raphael, A Law Corporation
P.O. Box 4365
Woodland Hills, CA 91365-4365
(818) 227-0100
C.188-207

2

## SPECIAL NOTICE

**THE FOLLOWING NOTICE IS GIVEN TO YOU IN THE EVENT THAT THE FEDERAL FAIR DEBT COLLECTIONS ACT APPLIES TO THIS COMMUNICATION.**

The following statement provides you with notice of certain rights which you may have by law. Nothing in this statement modifies or changes the hearing date or response time specified in the attached documents or your need to take legal action to protect your rights in this matter. No provision of the following statement modifies or removes your need to comply with local rules concerning the attached documents.

## CONSUMER DISCLOSURE

This communication is made in an attempt to collect on a debt or judgment and any information obtained will be used for that purpose. Please be advised that if you notify Countrywide Home Loans, Inc. attorneys in writing within 30 days that all or a part of your obligation or judgment to Countrywide Home Loans, Inc. is disputed, then Countrywide Home Loans, Inc.'s attorneys will mail to you a written verification of the obligations or judgment and the amounts owed to Countrywide Home Loans, Inc.. In addition and upon your written request within 30 days, you will be provided with the name and address of the original creditor, if different from the current creditor.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In Re:                                          Chapter 13

PAULO CABRAL                                    Case Number 05-11663-JNF

                              Debtor

CERTIFICATE OF SERVICE

       I, Jeffrey M. Frankel, Esquire, do hereby certify that I have served a copy of the
Motion for Relief ~~with Notice of Appearance~~ this _28th_ day of _July , 2005_ ,
either electronically or by first class mail, postage prepaid, upon the parties listed below.

                              /s/ Jeffrey M. Frankel
                              Jeffrey M. Frankel, Esquire, BBO #558099

Chapter 13 Trustee:
Doreen B. Solomon
P.O. Box 8250
Boston, MA 02114

U. S. Trustee, Region 1
Thomas P. O'Neill Federal Building
10 Causeway Street, 11th Floor
Boston, MA 02222

Debtor's Counsel:
Andrew C. Schultz
10 Ames Road
Marblehead, MA 01945
(781) 990-1323

Debtor
Paulo Cabral
435 Lafayette Street
Salem, MA 01970