**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS - BOSTON**

| | | |
|---|---|---|
| IN THE MATTER OF: | : | Case No. 05-11663 |
| PAULO CABRAL, | : | Boston, Massachusetts |
| | | **September 20, 2012** |
| Debtor. | : | 10:17:08 a.m. |

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

**TRANSCRIPT OF HEARING ON:**
**(#156) OBJECTION OF TRUSTEE MURPHY TO**
**OBJECTION TO CLAIM 1 AND 2 OF COUNTYWIDE HOME**
**LOANS, INC. AND IRS; (#161) RESPONSE OF IRS**
**BEFORE THE HONORABLE JOAN N. FEENEY, J.U.S.B.C.**

**APPEARANCES:**

| | |
|---|---|
| For Chapter 7 Trustee, <br> <u>Harold B. Murphy</u>: | Murphy & King P.C. <br> BY: KATHLEEN R. CRUICKSHANK, ESQ. <br> One Beacon Street, 21st Floor <br> Boston, MA  02108 |
| For Creditor, Internal <br> <u>Revenue Service</u>: | PATRICK F. GALLAGHER, ESQ. <br> 10 Causeway Street, Room 401 <br> Boston, MA  02222 |
| <u>Audio Operator</u>: | Ann Kelley, ECRO |
| Transcript prepared by: | JANICE RUSSELL TRANSCRIPTS <br> 1133 Tanager Trail <br> Virginia Beach, VA  23451 <br> (757) 422-9089 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

1                    P R O C E E D I N G S

2         THE COURT: Paulo Cabral. For some reason I --

3         THE COURTROOM DEPUTY: That one's off, Paulo Cabral.

4         THE COURT: Yeah.

5         MS. CRUICKSHANK: Your Honor, may I explain?

6         THE COURT: Yeah, sure. I, I was advised that this

7    hearing was cancelled.

8         MS. CRUICKSHANK: Your Honor, one of -- I submitted a

9    hearing agenda and a proposed order yesterday. The proposed

10   order dealt with one of the two claims that there was an

11   objection for and there was an indication that we still needed

12   a hearing on the IRS claim, but --

13        THE COURT: Okay.

14        MS. CRUICKSHANK: So we're here just on that --

15        THE COURT: Okay.

16        MS. CRUICKSHANK: -- claim.

17        THE COURT: I have it here so --

18        THE COURTROOM DEPUTY: You have it here?

19        THE COURT: I do, yeah.

20        MS. CRUICKSHANK: Kathleen Cruickshank on behalf of

21   the Chapter 7 Trustee, Harold Murphy.

22        THE COURT: So the Countrywide two claims have been

23   resolved. So the only remaining dispute is about the IRS

24   claim?

25        MS. CRUICKSHANK: Correct.

1        THE COURT:  Okay.  And what is the -- where are we on

2   that dispute?

3        MS. CRUICKSHANK:  Your Honor, the, in this case the

4   Trustee brought a fraudulent conveyant action, fraudulent

5   conveyance action against a, an individual by the name of Pedro

6   Comargo (phonetic) and numerous other defendants.  The Trustee

7   alleged that the debtor paid money to Comargo in 2002 and that

8   Comargo, in turn, transferred money to other, other defendants

9   in the action.

10       The IRS asserts that it perfected a lien in the

11  debtor's assets in 2004 after the money was transferred by the

12  debtor and where -- the Trustee's objection is on the basis

13  that the IRS' lien does not attach to the funds that the

14  Trustee has recovered in this case.  The Trustee saw no

15  evidence of a loan to Comargo.  The IRS' objection is -- is --

16  seems to be based on the assertion that this was an account

17  receivable that their lien attached to.

18       The Trustee brought the fraudulent conveyance action

19  and recovered no funds from Comargo.  There's a loan to Comargo

20  listed on the schedules and that's the basis for the IRS'

21  response.

22       The Trustee recovered from three defendants, not from

23  Comargo.  In each of the stipulations there was no admission of

24  liability.  So we would contend --

25       THE COURT:  The nature of the action was an avoidance

```
 1  power recovery?
 2        MS. CRUICKSHANK:  Yes, Your Honor.  And the, the
 3  funds --
 4        THE COURT:  And the IRS asserts a lien on that
 5  recovery?
 6        MS. CRUICKSHANK:  I'll let the IRS speak and I'll
 7  respond.
 8        THE COURT:  I'll ask later, but that's how you
 9  understand --
10        MS. CRUICKSHANK:  Yes, that's how I understand it,
11  Your Honor.  That's how I understand it.
12        And in the Court's, this Court's decision in
13  Lowenstein, you found that the Government's assertion, the
14  U. S.'s assertion of a lien in funds recovered by the Trustee
15  for fraudulent transfer didn't, the lien did not attach.  In
16  that case, the U. S. failed to satisfy its burden of showing
17  that it had a lien because the asset that could have been, that
18  could have secured the U. S.'s claim was gone from the estate
19  before the lien arose and when the Trustee recovered on the
20  fraudulent conveyance action, there was no finding of any
21  liability by any of the creditors.  It as just a settlement and
22  a turnover of funds.
23        And that's the situation we have here, Your Honor.
24  The, the IRS' lien, they assert that their lien was perfected
25  in 2004, funds were transferred by the debtor in 2002 before
```

```
 1  the lien attached, and the Trustee has recovered funds from
 2  third parties and --
 3            THE COURT:  Do you have a copy of the recorded lien?
 4            MS. CRUICKSHANK:  I just have --
 5            THE COURT:  It's not attached to the United States'
 6  response, as --
 7            MS. CRUICKSHANK:  No.
 8            THE COURT:  -- best I can see.
 9            MR. GALLAGHER:  Patrick Gallagher for the United
10  States and the IRS, Your Honor.
11            The proof of claim identifies the filing date and the
12  location of the --
13            THE COURT:  I appreciate that.  I'm looking for a copy
14  of the recorded lien --
15            MR. GALLAGHER:  I -- I --
16            THE COURT:  -- so that I can examine the scope of the
17  lien.
18            MR. GALLAGHER:  I don't have one with me, Your Honor.
19  I would be able to acquire one as soon as this hearing is over.
20            THE COURT:  It's not attached to the proof of claim,
21  as best I can tell --
22            MR. GALLAGHER:  I --
23            THE COURT:  -- is that right?
24            MR. GALLAGHER:  That is likely correct, Your Honor.  I
25  know that the --
```

6

1     THE COURT:  And what is the basis of your assertion
2  that the IRS' lien extends to the proceeds of an avoidance
3  power recovery?
4     MR. GALLAGHER:  Well, Your Honor, essentially, it's
5  the IRS' position that this was not a fraudulent conveyance,
6  but, rather, it was a loan on, a loan for consideration that
7  was made back in 2002 between the debtor and Mr. Comargo.
8     I just want to point out that in the schedules for
9  personal property, Schedule B -- this was the amended schedule,
10 I believe, submitted, filed with the Court on December 19, 2005
11 -- the debtor lists as account receivable a loan made to Pedro
12 Comardo.
13    THE COURT:  Just a minute, please.  I need to pull up
14 the schedules.
15    (Pause)
16    THE COURT:  All right.  You're referring to
17 Schedule B?
18    MR. GALLAGHER:  That's correct, Your Honor.
19    THE COURT:  Was that an amended schedule?  Because I
20 don't see it on Schedule B.
21    MR. GALLAGHER:  I thought it was an amended schedule,
22 but I could be wrong.
23    THE COURT:  Could you tell me when it was filed,
24 please?
25    MR. GALLAGHER:  It's Document 95, and it was filed on

**#05-11663**                                                    **9-20-2012**

1  December 19, 2005.
2           THE COURT:  Yeah.  Okay.
3       (Pause)
4           THE COURT:  All right.  The response to Question No.
5  15 by the debtor indicates a loan in the sum of $150,000 as an
6  account receivable --
7           MR. GALLAGHER:  Yes, Your Honor.  I just want to point
8  out --
9           THE COURT:  -- to Patrick Comardo.
10          MR. GALLAGHER:  Yeah.  It's Comardo --
11          THE COURT:  So you're saying the Trustee's avoidance
12 power recovery settlement was, indeed, a collection of this
13 account receivable?  Is that your argument?
14          MR. GALLAGHER:  Yes, Your Honor.
15          THE COURT:  Okay.
16       What is the adversary proceeding number?
17          MS. CRUICKSHANK:  Bear with me one moment, Your Honor.
18       (Pause)
19          MS. CRUICKSHANK:  I have it.
20          THE COURT:  I have it.  It's --
21          MS. CRUICKSHANK:  Oh.
22          THE COURT:  -- 07 --
23          MS. CRUICKSHANK:  It's 07 --
24          THE COURT:  -- -1065.
25          MS. CRUICKSHANK:  That's right.

8

```
 1              THE COURT:  Okay.  I have it.
 2         (Pause)
 3              THE COURT:  All right.
 4              Ms. Cruickshank, I'm a little confused.  Because I'm
 5    looking at the docket in the adversary proceeding and it
 6    indicates it was dismissed.  Oh, no.
 7              MS. CRUICKSHANK:  Yes, Your Honor.
 8              THE COURT:  After a compromise.
 9              MS. CRUICKSHANK:  After --
10              THE COURT:  Okay.
11              MS. CRUICKSHANK:  -- compromise --
12              THE COURT:  Okay.
13              MS. CRUICKSHANK:  -- with three defendants --
14              THE COURT:  Okay.
15              MS. CRUICKSHANK:  -- obtaining default judgments.
16              THE COURT:  It was dismissed as to --
17              MS. CRUICKSHANK:  Yes.
18              THE COURT:  -- several others?  Okay.
19              MS. CRUICKSHANK:  Yes.
20              THE COURT:  So could you summarize the nature of the
21    compromise?  Because you'll have to refresh my recollection.
22    It was a long time ago.
23              MS. CRUICKSHANK:  That, that's fine, Your Honor.
24              There were three settlements with three different
25    defendants, not with Mr. Comardo, who is listed on the
```

1  schedules.  They were three parties that he, in turn,

2  transferred money to after he received the money from the

3  debtor.

4         THE COURT:  "He" being Mr. Cabral or Mr. Comardo?

5         MS. CRUICKSHANK:  I'm sorry, Your Honor.  There was a

6  transfer from the debtor to Mr. Comargo.  Mr. Comargo, in turn,

7  then transferred funds to other defendants who are named.

8         THE COURT:  Right.

9         MS. CRUICKSHANK:  And so each of the, each of the

10 parties that the Trustee recovered funds from was one of those

11 mediate transferees.  They were, they had received money from

12 Mr. Comargo.  All of them asserted that, asserted defenses to

13 the claims and the settlements, the settlement recites that

14 each claimed it was a lien, a loan from Mr. Comargo, that, and

15 there were no admissions of liability, just a settlement in, in

16 response to the complaint.

17         THE COURT:  All right.  Thank you.

18         MS. CRUICKSHANK:  You're welcome.

19         THE COURT:  And how much was paid pursuant to the

20 compromise and by whom?

21         MS. CRUICKSHANK:  Eight thousand by Bank of America

22 and, I believe, 2,000 from a woman with the last name Souza,

23 and 4,000 from another defendant.  I actually have the --

24         THE COURT:  All right.  Go ahead, Mr. Murphy.

25 Gallagher.  I'm sorry.

                                                                        10

1        MR. GALLAGHER:  That's all right, Your Honor.
2        MS. CRUICKSHANK:  I actually brought you to the
3   settlements, but I left them in my briefcase.  I can give you
4   the names of the --
5        THE COURT:  Okay.  No, I have them.
6        MS. CRUICKSHANK:  Oh, you do?  Okay.
7        THE COURT:  I'm struggling --
8        MS. CRUICKSHANK:  Okay.
9        THE COURT:  -- to understand what the IRS' interest in
10  the compromise amount is.
11       MR. GALLAGHER:  Well, Your Honor, the, the lien was
12  filed on March 11, 2004 and on that day --
13       THE COURT:  I need to see the lien.
14       MR. GALLAGHER:  I understand, Your Honor, and I will
15  get you one.  It is -- to the, to the extent you would accept
16  this at least for now, it was a lien filed with the U. S.
17  District Court.  All IRS liens filed with the U. S. District
18  Court are personal property liens.
19       THE COURT:  I know that.
20       MR. GALLAGHER:  And -- and -- and I will produce the
21  lien, but that's what it will say.
22       THE COURT:  Why do you say the lien extends to
23  avoidance power recoveries?
24       MR. GALLAGHER:  Well, Your Honor, this was recovery of
25  an account receivable and not a fraudulent transfer.  If it, if

1  it were a fraudulent transfer, then I would not have opposed

2  the actions of the Chapter 7 Trustee.  But since it appears to

3  be an account receivable, rather than a fraudulent transfer and

4  on the date that the lien was filed --

5           THE COURT:  Do you have the complaint in front of you,

6  the Trustee's complaint?

7           MR. GALLAGHER:  I do.

8           THE COURT:  Okay.  What was Count 1?

9           MR. GALLAGHER:  Count 1 is an avoidance for fraudulent

10 transfer.

11          THE COURT:  What was Count 2?

12          MR. GALLAGHER:  Avoidance for fraudulent transfer.

13          THE COURT:  And Count 3?

14          MR. GALLAGHER:  Recovery of transfers.

15          Your Honor, I guess I -- I -- I don't understand and I

16 don't believe there is a case that would say that the avoidance

17 powers of the Chapter 7 Trustee would, would render, you know,

18 property that our lien would attach to, you know, to be

19 property that our lien does not, not attach to.

20          THE COURT:  The money that was paid was not paid on

21 account of a loan that was listed in the schedules by

22 Mr. Cambro [sic].  It was paid by Bank of America and Ms. Souza

23 on account of a settlement of an avoidance power action.

24          MR. GALLAGHER:  But that, that action stems from the

25 initial transaction between the debtor and Mr. Comardo.  I

```
 1  believe that that initial transaction was not a fraudulent

 2  transfer but, rather, a loan and, you know, I believe that, you

 3  know, my issue with those, the counts in the complaint is that

 4  it simply wasn't a fraudulent transfer between Mr., Mr. Cabral

 5  and Mr. Comardo and that the agreement, the stipulation is

 6  between, you know, if anything, a transfer of a transferee and,

 7  and not, you know, Mr., Mr. Comardo, who was the --

 8          THE COURT:  What evidence do you have to show that

 9  this settlement was not on account of a fraudulent transfer?

10          MR. GALLAGHER:  None, Your Honor, other than the fact

11  that it's not, it's not a stipulation between the initial

12  transferee and, and the Chapter 7 Trustee.

13          THE COURT:  Isn't that a two-edge sword?  It's a

14  settlement among two mediate transferees and the Trustee,

15  correct?

16          MR. GALLAGHER:  I'm not sure I, I agree.  When you say

17  "immediate transferee," wouldn't it be --

18          THE COURT:  I said "mediate" --

19          MR. GALLAGHER:  Oh, "mediate."

20          THE COURT:  -- not "immediate."

21          MR. GALLAGHER:  Oh.  I'm sorry.

22          THE COURT:  "Mediate."

23          MR. GALLAGHER:  It is.  I -- I -- you know --

24          THE COURT:  It's not a settlement between the Trustee

25  and the initial transferee.
```

1       MR. GALLAGHER:  That's, that's correct.

2       I believe there's a case, In re Soares, and again, I

3  mean, if this, if the initial transferee had stipulated with

4  the Chapter 7 Trustee, I would have no grounds to oppose, but I

5  just don't believe that the stipulation between a mediate

6  transferee and the Chapter 7, you know, it can render this a

7  fraudulent conveyance, rather than an account receivable.

8       THE COURT:  Do you have anything else?

9       MR. GALLAGHER:  No, Your Honor.

10      THE COURT:  Did you wish to respond?

11      MS. CRUICKSHANK:  Just briefly, Your Honor.

12      You know, there, there is no evidence about the source

13 of these funds and there's no connection between the Trustee's

14 recovery and the IRS' lien, that the Trustee can see.

15      THE COURT:  Well, did the Trustee seek to collect the

16 receivable from Mr., is it Cambro?

17      MS. CRUICKSHANK:  Yes, Your Honor.  And I -- I can --

18 Mr. Comargo, I believe, his name is.

19      THE COURT:  Comargo.  Excuse me.

20      MS. CRUICKSHANK:  He disappeared, Your Honor, and we

21 obtained a default judgment against him.

22      THE COURT:  What is the relationship of your avoidance

23 power recovery, the Trustee's avoidance power recovery to the

24 account receivable?

25      MS. CRUICKSHANK:  Well, Your Honor, you know, this is

**14**

1   -- this is going back a while.  I, I don't have the answer to

2   that.  What I would assume --

3          THE COURT:  That's what I need the answer to.

4          MS. CRUICKSHANK:  -- the Trustee would have brought

5   the fraudulent conveyance action because there was no evidence

6   of a note or a loan.  Otherwise, the Trustee would have

7   proceeded under different grounds.  So there --

8          THE COURT:  Comar -- what was your cause of action

9   against Comargo?

10         MS. CRUICKSHANK:  It was a fraudulent conveyance

11  action, Your Honor.

12         THE COURT:  With him as transferee or transferor?

13         MS. CRUICKSHANK:  As him as transferee.  He was named

14  as a defendant in the action --

15         THE COURT:  Uh-huh.  (Indicating an affirmative

16  response)

17         MS. CRUICKSHANK:  -- as the mediate transferee.

18         THE COURT:  And what was supposedly transferred to --

19         MS. CRUICKSHANK:  There was --

20         THE COURT:  -- him and the other defendants?

21         MS. CRUICKSHANK:  It was a check for 130,000 and funds

22  transferred to him in 2002.  We -- the Trustee had the check

23  and nothing else based on the complaint.

24         THE COURT:  Well, what do you know about the

25  receivable that was listed on the schedules?

**#05-11663**                                                **9-20-2012**

1    MS. CRUICKSHANK: I don't know anything about the
2 receivable, Your Honor. I don't know that there's -- there was
3 no evidence of that, of any kind of receivable and no evidence
4 of a promissory note.
5    THE COURT: All right. I'd like to see the lien,
6 please, and, if necessary, I'll have you back in.
7    I, I would like to see an affidavit from the Trustee
8 on the nature of the avoidance power recovery and what
9 investigation he made with respect to the receivable that was
10 listed on the schedules and also, what -- I'd like to see his
11 analysis of that asset. And then we'll go from there.
12    I may have you back in. I might decide the motion
13 because there are no disputed facts. When I say "motion," I
14 mean the objection to the claim.
15    The only issue is whether the claim is a secured
16 claim, correct?
17    MR. GALLAGHER: Yes, Your Honor.
18    MS. CRUICKSHANK: Yes, Your Honor.
19    THE COURT: There is no dispute as to the amount of
20 the claim?
21    MS. CRUICKSHANK: No, Your Honor.
22    THE COURT: Thank you.
23    When can the Trustee submit the affidavit?
24    And when can you submit your lien claim?
25    MR. GALLAGHER: Your Honor, I will attempt to submit

1  the lien tomorrow morning, or possibly this afternoon.

2          THE COURT:  You can both have a week.  That's fine.

3          MS. CRUICKSHANK:  That would be great.

4                           * * *

5          MS. CRUICKSHANK:  Thank you, Your Honor.

6      (Proceedings concluded at 10:34:16 a.m.)

7

8

9                            CERTIFICATE

10         I, court approved transcriber, certify that the

11  foregoing is a correct transcript from the official electronic

12  sound recording of the proceedings in the above-entitled

13  matter.

14  /s/ *Janice Russell*                           September 24, 2012

15  Janice Russell, Transcriber                    Date

16

17

18

19

20

21

22

23

24

25