UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 7 |
| PAULO CABRAL, ) | Case No. 05-11663-JNF |
| ) | |
| Debtor. ) | |

**AFFIDAVIT OF HAROLD B. MURPHY IN SUPPORT OF CHAPTER 7 TRUSTEE'S OBJECTION TO CLAIM OF INTERNAL REVENUE SERVICE**

Pursuant to Federal Rule of Bankruptcy Procedure 2014(a), MLBR 2014-1 and 28 U.S.C. § 1746, I, Harold B. Murphy, being duly sworn, hereby state as follows:

1. The above-captioned debtor (the "Debtor") filed a voluntary Chapter 13 petition on March 9, 2005 (the "Petition Date.") On November 28, 2005, the Court entered an order approving the Debtor's motion to convert the chapter 13 case to a case under chapter 7.

2. I am the duly appointed Chapter 7 Trustee (the "Trustee") in the above captioned case.

3. This affidavit is submitted in response to the Court's order of September 20, 2012 requiring me to submit an affidavit setting forth my analysis of an asserted loan listed on the Debtor's Schedule B of his Schedules and Statement of Financial Affairs.

4. On the Debtor's Schedules of Assets and Liabilities, the Debtor scheduled a loan due from Pedro Camardo[1] ("Camardo") in the amount of $150,000.

5. At the Debtor's Section 341 meeting, I questioned the Debtor about the alleged loan. The Debtor testified that: (i) he had made a payment to Camardo approximately three years prior to the Petition Date; (ii) Camardo promised to return the payment in a year; (iii) he hired an attorney to

---

[1] The Debtor's schedules refer to a Pedro "Camardo," while the Trustee later uncovered evidence of a transfer by the Debtor to a Pedro "Camargo." The Trustee believes that the Schedules contain a typographical error.

sue Camardo for return of the payment, but Camardo returned to Brazil before he could be served with a summons; (iv) at one point, Camardo promised to wire the money, but did not; (v) he received a call from Camardo in Brazil stating that he would be paid within a short time; (vi) he conducted an asset check on Camardo and determined that he had sold his home in Fall River; (vii) he spoke to other members of Camardo's family, including his daughter; (viii) based on his discussions with Camardo's family members and his investigation of the Debtor's assets, he believed Camardo had no assets.

6. My investigation into the Debtor's financial affairs revealed that on or about December 1, 2002, the Debtor gave Pedro L. Camargo ("Camargo") a check in the amount of $133,000 (the "Payment").

7. The Debtor did not produce, nor was I able to obtain, any additional documentation relating to the Payment that would be consistent with a loan transaction, such as a promissory note. My counsel subsequently determined from a conversation with Debtor's counsel on May 22, 2006, that Camargo had allegedly convinced the Debtor to give him money for an "investment" in Brazil.

8. I obtained Court authority to subpoena Camargo's bank records and determined that Camargo deposited the Payment into his bank account at Citizens Bank. Citizens Bank subsequently honored the Payment. With the proceeds of the Payment, Camargo made numerous transfers to various third parties. My counsel conferred with several of the parties to whom Camargo paid with the proceeds of the Payment. Each claimed to have been owed money by Camargo and stated that Camargo's payments to them constituted a repayment of such debts.

9. On January 9, 2007, I filed a motion with the Court seeking authority to conduct the 2004 examination of Camargo. One of the purposes of the examination was to determine whether the Payment was in fact a loan or a fraudulent conveyance. Camargo failed to appear to be examined.

10. On or about March 8, 2007, I commenced an adversary proceeding (the "Adversary Proceeding") against Camargo and the various third parties to whom he had transferred proceeds of the Payment, including Bank of America ("BOA"), Sostenes Souze ("Souze"), and several others. Pursuant to the Adversary Proceeding, I sought to avoid and recover for the Estate the Payment to Camargo and others as a fraudulent conveyance.

11. Or about March 4, 2008, this Court entered default judgments against Camargo. My counsel attempted to collect upon the judgment, serving Camargo with a subpoena to compel his appearance at a deposition in order to advance my collection of the default judgment. Camargo failed to appear.

12. I believe that the judgment he obtained against Camargo is uncollectible. I have collected no funds from Camargo.

13. I concluded that the Payment constituted a fraudulent transfer and not a loan because I was unable to locate any documentation to support a claim that the Payment in fact was a loan.

14. I have collected funds from only two of the defendants, BOA and Souze, whose liability to the Estate was premised upon a fraudulent conveyance theory of recovery, and not upon collection of an account receivable.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

                                                              /s/ Harold B. Murphy
                                                              Harold B. Murphy

Dated: September 27, 2012
605053