UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**PAULO CABRAL,**                                                                    Chapter 7
   Debtor                                                                                     Case No. 05-11663-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

**I. INTRODUCTION**

The matter before the Court is the Chapter 7 Trustee's Objection to the Claim of the Internal Revenue Service ("IRS"). The IRS filed a Response to the Trustee's Objection, and the Court heard the matter on September 20, 2012. At the conclusion of the hearing, the Court directed the IRS to submit a copy of the notice of lien recorded in the United States District Court and the Trustee to submit an affidavit setting forth his analysis of the "account receivable" listed by Paulo Cabral (the "Debtor") on his amended Schedule B-Personal Property.

The issue presented is whether the claim of the IRS is secured by an account

1

receivable or whether it is unsecured because its recorded lien did not attach to avoidance power recoveries. *See* 11 U.S.C. §§ 544-549. The material facts necessary to decide the issue of whether the IRS holds a secured claim are not in dispute. Neither party requested an evidentiary hearing.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The Debtor commenced a Chapter 13 case on March 9, 2005. He moved to convert his Chapter 13 case to a case under Chapter 7 on November 10, 2005, which motion was granted on November 28, 2005.

On April 9, 2005, the IRS filed a proof of claim asserting a claim in the amount of $166,209.46 secured by all of the Debtor's right, title and interest to property pursuant to 26 U.S.C. § 6321. Section 6321 provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon *all property and rights to property, whether real or personal, belonging to such person*.

26 U.S..C. § 6321 (emphasis supplied).[1]

---

[1] Section 6322 provides that "Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. Pursuant to 26 U.S.C. 6323(a), "The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." To secure a tax lien on personal property, the notice must be filed in one office within the State as designated by the laws of such state or in the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated. *See* 26 U.S.C. §

2

The IRS attached to its proof of claim a chart setting forth the tax periods for which it claimed taxes are owed by the Debtor (1999 and 2000), the date that taxes were assessed (July 7, 2003 and June 16, 2003 [sic]), the tax and penalties due, and the amount of interest due at the petition date, and the locations where the liens were filed, i.e., the United States District Court for the District of Massachusetts, the Southern Essex Registry of Deeds and the Southern Middlesex Registry of Deeds. The liens were recorded between March 11, 2004 and August 3, 2004.

As the basis for his Objection to the IRS claim, the Trustee stated that he recovered monies as a result of the avoidance of a fraudulent transfer of funds by the Debtor on or about December 1, 2002, over one year before the first tax assessment made by the IRS. According to the Trustee, the IRS did not perfect its lien on property of the Debtor prior to the transfer and, thus, he did not administer property subject to its lien. Additionally, he stated that the IRS lien did not attach to his avoidance power recoveries.

The IRS filed a Response to the Trustee's Objection in which it stated that the funds recovered by the Trustee "may partially consist of an account receivable identified on the Debtor's amended Schedule B filed with the Court on December 9, 2005 to which the Service assessment liens under 26 U.S.C. § 6321 would have attached on June 16, 2004 for

---

6323(f).

3

the 2000 tax year[2] and on July 7, 2003 for the 1999 tax year." It added that it filed a notice of federal tax lien for the 1999 and 2000 tax years with the United State District Court for the District of Massachusetts on March 11, 2004.

>Specifically, the IRS stated:
>
>On the debtor's amended Schedule B filed with the Court on December 19, 2005, the debtor identifies, as personal property, an account receivable in the amount of $150,000. The account receivable is further described as "Loan made to Pedro Camardo, 591 Lynn St., Malden, Mass. 02148. Loan made pre-petition."
>
>In the complaint to avoid and recover avoidable transfers, the Trustee alleges that there occurred a fraudulent transfer in the amount of $133,000 between the debtor and Pedro L. Camargo on December 9, 2002. The service address for Pedro L. Camargo is identified as 591 Lynn St., Malden, MA 02148.
>
>It appears that Pedro Camardo and Pedro Camargo may be the same person, and that the alleged fraudulent transfer was a loan from debtor to Pedro Camardo/Camargo.
>
>Pedro L. Camardo did not file an answer to the Trustee's complaint to avoid transfers and a default judgment was entered against him on May 22, 2007. Accordingly, the issue of whether a fraudulent transfer occurred between Mr. Camardo and the debtor was not decided on the merits. To that end, it respectfully noted that the debtor may not have been rendered insolvent by the transfer. According to the debtor's amended schedules filed on December 19, 2005, he was not insolvent on the day his Chapter 13 petition was filed. Also, the Trustee did not establish in the adversary case (No. 07-1065) that the transfer was made without adequate consideration.
>
>To the extent that the funds in dispute constitute a loan or account receivable, the Service's liens would attach thereto as of the relevant assessment dates.

The IRS subsequently filed a copy of a notice of lien recorded in the United States District

---

[2] The proof of claim filed by the IRS referenced a June 16, 2003 assessment date for the 2000 taxes owed.

4

Court for the tax years ending on December 31, 1999 and December 31, 2000. As noted above, the assessments were made on July 7, 2003 and most likely June 16, 2004 and the notice was recorded on March 11, 2004.[3]

In his Affidavit, the Chapter 7 Trustee recognized that the Debtor listed as an account receivable a loan made to Pedro Camardo (although the Trustee uncovered evidence of a transfer to an individual known as Pedro Camargo) ("Camargo") in the amount of $150,000 on amended Schedule B-Personal Property.[4] According to the Trustee, the Debtor testified at the section 341 meeting that he made a payment to Camargo approximately three years before he filed his bankruptcy petition; that Camargo promised to return the payment within one year; that he retained an attorney to sue Camargo for the return of the payment, but Camargo returned to Brazil before he could be served with the summons and complaint; that Camargo promised to repay the funds but failed to do so;

---

[3] On the Debtor's Schedule A-Real Property, he listed property located at 435 Lafayette Street, Salem, MA valued at $900,000, subject to a mortgage held by Countrywide Home Loans, Inc. in the approximate amount of $600,000, and a federal tax lien of $145,000 (not listed on Schedule D-Creditors Holding Secured Claims, but on Schedule E-Creditors Holding Unsecured Priority Claims). Countrywide moved for and was granted relief from the automatic stay on November 10, 2005 prior to the conversion of the Debtor's Chapter 13 case to a case under Chapter 7. In its Motion for Relief from the Automatic Stay, Countrywide indicated that the total amount due under the mortgage was $678,331.21. On amended Schedule E, filed after the conversion of his Chapter 13 case to a case under Chapter 7 the Debtor deleted the federal tax lien and added a claim in the sum of $165,000 held by Judith Giardina. He also listed approximately $30,000 in unsecured debt.

[4] The Debtor originally filed a Chapter 13 petition. On his Statement of Financial Affairs, the Debtor indicated that he was a self-employed contractor. He did not list the "account receivable" on his original Schedule B.

5

and that Camargo had no assets from which the Trustee could obtain the funds.

In his Affidavit, the Trustee further stated that he learned that, on or about December 1, 2002, the Debtor gave Camargo a check in the sum of $133,000. The Trustee indicated that he was unable to obtain any documentation with respect a loan transaction, including a promissory note. The Trustee further stated that he learned that the Debtor gave Camargo the money for an investment in Brazil and that he was unable to obtain any documentation about the payment which would be consistent with a loan transaction as opposed to an investment. Upon receipt of the payment, Camargo made numerous transfers to third parties who claimed to be his creditors.

The Trustee indicated that he commenced an adversary proceeding against Camargo, and others (i.e., Jose M.V. Almeida, Manuel DeSousa, Marcel Ribeiro, Mario Rodrigues, Marcel Santo, Josuel Santos, Sostenes Souze, Bank of America, N.A., as successor to Fleet National Bank, and John Does 1-25). The Court notes that the Complaint, captioned "Complaint to Avoid and Recover Avoidable Transfers, contained two counts: Count I -Avoidance of Fraudulent Transfers (11 U.S.C. § 544(b) and Mass. Gen. Laws ch. 109A, §6(a)); and Count II - (Recovery of Transfers (11 U.S.C. § 550)).[5]

---

[5] In a Statement filed in the adversary proceeding, the Trustee stated:

> The Trustee has obtained a default judgment against the initial transferee, but upon information and belief, the initial transferee has left the country and is residing in Brazil. Of the eight remaining defendants who were intermediate transferees, one defendant has died and a second defendant has no liability because his apparent involvement in the alleged fraudulent transfer was the result of identity theft. Of the six remaining defendants and intermediate transferees, the Trustee has settled with two and has

In his Affidavit, the Trustee stated that he obtained a default judgment on March 4, 2008 against Camargo, but eventually determined that the judgment was uncollectible. He added that he collected funds from two of the named defendants in the adversary proceeding, namely Bank of America and Sostenes Souze, whose liability was predicated upon receipt of fraudulent conveyance proceeds as immediate or mediate transferees, not the collection of an account receivable. The Trustee filed a Motion to Approve Settlement Stipulation with Sostenes Souza to which the IRS did not object, as well as a Motion to Approve Compromise with Bank of America to which the IRS did not object.[6]

**III. DISCUSSION**

A. <u>Applicable Law</u>

According to the United States Bankruptcy Appellate Panel for the First Circuit in <u>In re Plourde</u>, 418 B.R. 495 (B.A.P. 1st Cir. 2009),

> Sections 501 and 502 govern the filing and allowance of creditor claims in bankruptcy proceedings. *See* <u>Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co.</u>, 549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007). When a debtor files for relief, each creditor is entitled to file a proof of claim against the debtor's estate pursuant to § 501. Once a creditor has filed such a proof, the bankruptcy court must determine whether the claim is "allowed." Section 502(a) provides that a proof of claim filed under § 501 is deemed allowed unless a party in interest (often the trustee) objects.

---

obtained default judgments against three. With respect to the final defendant, the Trustee has determined that the claim is likely uncollectible, and that no benefit will inure to the Estate by the Trustee's continued efforts to litigate this matter.

[6] The Stipulation with Bank of America was filed in the adversary proceeding. The Stipulation with Sostenes Souza was filed in the main case.

7

***

> Bankruptcy Rule 3001(f) sets the evidentiary effect of a properly filed proof of claim (i.e., one that complies with the requirements of the rule and form), stating that a claim "filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr.P. 3001(f); *see also* In re Long, 353 B.R. 1, 13 (Bankr. D. Mass.2006) (citing Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir.1993)).
>
> In order to rebut the prima facie evidence a proper proof of claim provides, the objecting party must produce "substantial evidence" in opposition to it. *See* In re Long, 353 B.R. at 13; *see also* United States v. Clifford (In re Clifford), 255 B.R. 258, 262 (D. Mass. 2000). If the objection is substantial, the claimant "is required to come forward with evidence to support its claims . . . and bears the burden of proving its claims by a preponderance of the evidence." Tracey v. United States (In re Tracey), 394 B.R. 635, 639 (1st Cir. BAP 2008) (citing In re Organogenesis, Inc., 316 B.R. 574, 583 (Bankr. D. Mass. 2004)).

Plourde, 418 B.R. at 502-03, 504 (footnotes omitted).

With respect to tax claims in particular, the court in In re Soares, 380 B.R. 109 (Bankr. D. Mass. 2007), stated:

> It is the burden of the Service to demonstrate entitlement to the settlement proceeds. This issue has arisen in various contexts. Some courts have taken the position that "a prepetition lien or security interest will attach to an avoidance recovery if, but only if, what is recovered is clearly identifiable as the collateral itself or as the proceeds of prepetition collateral, and if the creditor's security interest would be enforceable against the transferee outside of bankruptcy."

Id. at 113 (footnotes omitted)(citing Callahan v. Internal Revenue Service (In re Ball), No. 7–99–02518–WSA, 2004 WL 909441 (Bankr. W.D. Va. Mar. 10, 2004), and In re Lowenstein, 361 B.R. 326 (Bankr. D. Mass. 2007)).

   B. Analysis

As noted above, the IRS, upon assessment and recording of its notice of lien,

obtained "a lien . . . upon all property and rights to property, whether real or personal, belonging to such person [who is liable to pay any tax but neglects or refuses to do so after demand]." Generally, avoidance power recoveries are property of the estate, not property of the debtor. *See* 11 U.S.C. 541(a)(4)(property of the estate includes: "Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title."). The Trustee recovered monies via settlement from intermediate or mediate transferees of Camargo following the commencement of an adversary proceeding. The Trustee caused motions for authority to compromise with those defendants to be filed with the Court. The IRS did not object to those settlements which were predicated upon the Trustee's adversary proceeding to recover a fraudulent transfer.

Upon consideration of the Trustee's unrebutted Affidavit and the IRS's personal property lien, the Court finds that the weight of the evidence compels the conclusion that the IRS lien did not attach to the monies the Trustee recovered from the intermediate or mediate transferees of Camargo. Moreover, the alleged transfer occurred in December of 2002, well before the IRS recorded its lien.

The IRS did not sustain its burden of producing "substantial evidence" that its claim is secured by the monies obtained by the Trustee through settlement with defendants in his fraudulent transfer complaint. In the instant case, the IRS failed to satisfy its burden of clearly identifying the avoidance power recoveries as its collateral or proceeds of its collateral or in establishing that Camargo's obligation to the Debtor was related to an account receivable. Although the IRS, relying upon the Debtor's amended Schedule B,

contended that the transfer to Camargo created an account receivable, it produced no evidence to support its contention or challenge the Trustee's Affidavit, in which the Trustee stated that he was unable to obtain evidence of a loan transaction.

## IV. CONCLUSION

In accordance with the foregoing, the Court shall enter an order sustaining the Chapter 7 Trustee's Objection to the Claim of the IRS as to its secured status, but not the amount of the claim.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: November 2, 2012